ST. LOUIS INDEPENDENT PACKING CO. v. HOUSTON, Secretary of Agriculture, et al.

(District Court, E. D. Missouri, E. D. April 12, 1913.)

No. 4,156.

Food (§ 7*)—Meat Products—Sale—Deceptive Name—Secretary of Agriculture—Regulations—Authority—"Sausage."

Act Cong. June 30, 1906, c. 3913, 34 Stat. 674, declares that no meat or meat product shall be sold or offered for sale by any person in interstate or foreign commerce under a false or deceptive name, and that the Secretary of Agriculture from time to time shall make such rules and regulations as are necessary for the efficient execution of the act. *Held,* that the term "sausage" being defined by lexicographers as an article of food composed of meat, salt, and spices, the Secretary of Agriculture had authority to prescribe that meat products sold under the name of "sausage" should not contain cereal in excess of 2 per cent.,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

nor water or ice in excess of 3 per cent., and if water and cereal are added the substance should be labeled "Sausage, water, and cereal."

[Ed. Note.—For other cases, see Food, Cent. Dig. § 1; Dec. Dig. § 7.*]

In Equity. Suit by the St. Louis Independent Packing Company against David F. Houston, Secretary of Agriculture, and others. Decree for defendants.

Franklin Ferriss, Joseph H. Zumbalen, Henry T. Ferriss, and Matt. G. Reynolds, all of St. Louis, Mo., for plaintiff.

Homer Hall, Asst. U. S. Atty., of St. Louis, Mo., for defendants.

DYER, District Judge. The defendants in this case are the Secretary of Agriculture, the Chief of the Bureau of Animal Industry, and the Chief Inspector of said Bureau. The latter is the only one of the defendants before the court. The other two are nonresidents, and therefore without the jurisdiction of the court.

The bill discloses the fact that the complainant is a corporation organized under the laws of Missouri, and as such owns and operates a slaughtering establishment, at which it conducts the business of slaughtering cattle, sheep, and hogs and manufacturing a meat product commonly styled and designated as "sausage."

The plaintiff alleges that the sausages so manufactured by it "are compounds and mixtures composed and manufactured from meat of hams, pork, spices and cereals"; that in the product thus manufactured there is contained from 1 to 10 per cent. of wholesome cereal and a varying amount of pure water, which, together with meat and spices, make a sound, healthful, and wholesome product, with which there is neither dyes, chemicals, preservatives, nor ingredients calculated to make the same unfit for human food.

The bill further alleges that the use of cereal and water in the manufacture of sausage is customary and necessary, and has been universally recognized for more than 50 years, and ever since sausages have been known as a commercial product.

It further appears by the allegations of the bill that after the approval by the President, on the 30th of June, 1906, of an act entitled "An act making appropriations for the Department of Agriculture for the fiscal year ending June 30th, 1907," the Secretary of Agriculture, claiming to act under the provisions of said act of Congress, established at the plant of the plaintiff, in the city of St. Louis, a system of inspection by which the operation of said plant was under the charge of an inspector assigned by the Bureau of Animal Industry to supervise its official work, etc.

It is not deemed necessary to recite the various provisions and allegations of the bill to get at the real point of controversy involved here. It may be briefly summarized as follows: The plaintiff is a manufacturer of a commodity called sausage, and in the manufacture thereof it uses as a part of the product from 1 to 10 per cent. of wholesome cereal and a varying amount of pure water; that the

Secretary of Agriculture, on the 28th of February, 1913, promulgated the following regulation, to be effective on April 1st thereafter, to wit:

· "United States Department of Agriculture, Office of the Secretary.
"Washington, D: C. Feb. 28, 1913.

"For the purpose of preventing the use in interstate or foreign commerce of meat or meat food products under any false or deceptive name, under the authority conferred on the Secretary of Agriculture by the provisions of the act of Congress, approved June 30, 1906 (34 Stat. 674 [c. 3913]), regulation 18 is hereby amended by the addition of sections 15 and 16, to read as hereinafter set out.

"This amendment, which for purposes of identification is designated as amendment 4 to B. A. I. order 150, shall ·become effective on and after April 1, 1913.                    James Wilson, Secretary of Agriculture.

"Section 16, paragraph 1. Sausage shall not contain cereal in excess of two per cent. When cereal is added its presence shall be stated on the label or on the product.

"Paragraph 2. Water or ice shall not be added to sausage except for the purpose of facilitating grinding, chopping and mixing, in which case the added water or ice shall not exceed three per cent., except as provided in the following paragraph:

"Paragraph 3. Sausages of the class which are smoked or cooked, such as Frankfort style, Vienna style, and Bologna style, may contain added water in excess of three per cent. but not in excess of an amount sufficient to make the product palatable. When water (in excess of three per cent.) and cereal are added to this class of sausages the statement 'Sausage, water and cereal' shall appear on the label or on the product, but when no cereal is added the addition of water need not be stated."

The bill claims that this regulation is null and void, on the ground that the Secretary was without authority to make the same, and that the act of Congress conferred upon him no such power. It will be seen, therefore, that the real point in controversy is as to whether the regulation is valid or invalid. If it is valid, the prayer of the bill for an injunction should be denied; otherwise granted.

So much of the act of Congress as is deemed applicable to the present inquiry is as follows:

"That when any meat or meat food product prepared for interstate or foreign commerce which has been inspected as hereinbefore provided and marked 'Inspected and Passed' shall be placed or packed in any can, pot, tin, canvas, or other receptacle or covering in any establishment where inspection under the provisions of this act is maintained, the person, firm or corporation preparing said product shall cause a label to be attached to said can, pot, tin, canvas, or other receptacle or covering, under the supervision of an inspector, which label shall state that the contents thereof have been 'Inspected and Passed' under the provisions of this act; and no inspection and examination of meat or meat food products deposited or inclosed in cans, tins, pots, canvas, or other receptacle or covering in any establishment where inspection under the provisions of this act is maintained shall be deemed to be complete until such meat or meat food products have been sealed or inclosed in said can, tin, pot, canvas, or other receptacle or covering under the supervision of an inspector, and no such meat or meat food products shall be sold or offered for sale by any person, firm, or corporation in interstate or foreign commerce under any false or deceptive name; but established trade name or names which are usual to such products and which are not false and deceptive and which shall be approved by the Secretary of Agriculture are permitted.

*        *        *        *        *        *        *        *        *

"That any person, firm or corporation, or any officer or agent of any such person, firm or corporation, who shall violate any of the provisions of this

act shall be deemed guilty of a misdemeanor, and shall be punished on conviction thereof by a fine of not exceeding ten thousand dollars or imprisonment for a period of not more than two years, or by both such fine and imprisonment, in the discretion of the court.

*    *    *    *    *    *    *    *    *    *

"The Secretary of Agriculture shall from time to time make such rules and regulations as are necessary for the efficient execution of the provisions of this act, and all inspections and examinations made under this act shall be such and made in such manner as described in the rules and regulations prescribed by said Secretary of Agriculture not inconsistent with the provisions of this act.'

It would seem from the act that no meat nor meat food products can be "sold or offered for sale by any person, firm, or corporation in interstate or foreign commerce *under any false or deceptive name;* but established trade name or names which are usual to such products and which *are not false and deceptive* and which shall be, *approved by the Secretary of Agriculture* are permitted."

If the meat product of the plaintiff, called "sausage," composed of meat and spices, and cereal in excess of 2 per cent. and water in excess of 3 per cent., is a false or deceptive name, then and in that case the plaintiff would not be authorized to sell or offer for sale such product, called sausage; nor would the inspector be authorized to put thereon the words "Inspected and Passed."

The act of Congress declares that no "meat or meat food product shall be sold or offered for sale by any person, firm or corporation in interstate or foreign commerce under any false or deceptive name."

The act further provides that the "Secretary of Agriculture shall from time to time make such rules and regulations as are necessary for the efficient execution of the provisions of this act."

The regulation complained of in the bill recites that "for the purpose of preventing the use in interstate or foreign commerce of meat or meat food products under any false or deceptive name *   *   * sausage shall not contain cereal in excess of two per cent.   *   *   * nor water or ice in excess of three per cent."

Had the Secretary power and authority to make and promulgate the regulation complained of? The court answers the question in the affirmative.

This court is no better informed than the judge of the Supreme Court of Michigan who wrote the opinion in Armour & Co. v. State Dairy and Food Com'r, 159 Mich. 1, 123 N. W. 580, 25 L. R. A. (N. S.) 616. He said:

"Sausage is defined by all the lexicographers as an article of food composed of meat, salt and spices. The people generally so understand it. The writer of this opinion would be compelled to admit that until very recently he had no knowledge that cereal was used in the manufacture of sausage."

This judge, although eating sausage for 70 years, never knew or even heard that cereals were used in this toothsome delicacy until the beginning of this hearing on last Tuesday.

The act of Congress under which the Secretary of Agriculture claims to have acted in promulgating the order of February 28, 1913, is so important in its character, and so far-reaching in its effect upon

the good of mankind, the court should be absolutely sure of its footing before it strips the officer (charged with the duty of making "such rules and regulations as are necessary for the efficient execution of the provisions of the act") of the right he claims to have exercised, in promulgating the order of February 28, 1913.

The prayer of the plaintiff for a temporary injunction will be denied; and it is so ordered.